UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DENNIS S. HEBER, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] <br><br> Defendant. | Case No. CV 16-01449-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Dennis S. Heber ("Plaintiff") appeals from the Social Security Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income. For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

///

///

---

[1] On January 21, 2017, Berryhill became the Acting Social Security Commissioner. She is automatically substituted as Defendant under Federal Rule of Civil Procedure 25(d).

## I.

## BACKGROUND

Plaintiff applied for supplemental security income and disability insurance benefits on December 10, 2012, alleging disability beginning on March 25, 2008. Administrative Record ("AR") 56-58, 143-58. After his applications were denied, AR 45-89, 92-97, he requested a hearing before an Administrative Law Judge ("ALJ"), AR 98-99. A hearing was held on May 12, 2015, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE"). AR 31-44.

In a written decision issued on May 29, 2015, the ALJ denied Plaintiff's claims. AR 14-30. The ALJ found that Plaintiff had the severe impairment of "mental retardation to borderline," but it did not meet or equal an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1. AR 19-20. The ALJ found that Plaintiff retained a residual functional capacity to perform a full range of work at all exertional levels, including heavy work, with the following non-exertional limitations: he could understand and remember tasks; sustain concentration and persistence; socially interact with the general public, co-workers, and supervisors; and adapt to workplace changes frequently enough to perform unskilled, low stress jobs that require simple instructions. AR 22. Based on the VE's testimony, the ALJ found that Plaintiff was unable to perform his past relevant work as a food server and warehouse worker, but he could work as a hospital cleaner, poultry hanger, and bag loader. AR 25. Therefore, the ALJ concluded that Plaintiff was not disabled. AR 26.

Plaintiff requested review of the ALJ's decision. AR 11-13. On January 20, 2016, the Appeals Council denied review. AR 1-7. This action followed.
/// 
///

## II.
## DISCUSSION

The parties dispute whether (1) the ALJ erred in concluding at step two of the sequential evaluation process that Plaintiff did not have a severe physical impairment and (2) the ALJ erred in concluding at step three that Plaintiff's impairments did not meet the requirements of a Listing. See Dkt. 20, Joint Stipulation ("JS") at 4, 10-11, 13-17.[2]

**A.    ALJ's Step-Two Finding**

**1.    Hearing Testimony and ALJ Opinion**

At the hearing, Plaintiff testified that he had hernia surgery that "went well, but after a while it starts to get weak in the area." AR 36-37. His ability to sit was "so-so" because his lower back started to hurt if he sat for 3 or 4 hours. AR 36. He had "not much" of an ability to lift things and experienced low-back pain near the hernia repair site when he lifted items weighing more than 50 pounds. Id. Plaintiff worked as a kitchen aide for 3 or 4 hours every day, but was "not sure" if he could do the job full time, because his back started to hurt after "too long on [his] feet." AR 38. He could stand or walk for at least 4 out of 8 hours, and "maybe" could stand or walk for a longer period. AR 39. His roommate's mother did the household chores, and his roommate did the cooking. AR 37. To pass time during the day, Plaintiff went to the mall. Id.

With respect to Plaintiff's alleged physical limitations, the ALJ found:

> [Plaintiff's] medically determinable impairment of enlarged prostate and crooked spinal cord, allergic rhinitis, esophageal reflux, osteoarthritis, inguinal hernia, dysphagia, and hyperlipidemia, as alleged by [Plaintiff] and evidenced by the

---

[2] The Joint Stipulation presents only one disputed issue. See JS at 4. Because it consists of two distinct arguments, the Court addresses each argument separately.

3

record did not cause more than minimal limitation in [his] ability to perform basic work activities. The medical evidence of record reveals that [Plaintiff] walks daily for one to two hours. [He] has no problems with personal care. [Plaintiff] has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. [Plaintiff] reported that he does household chores such as cleaning and laundry and all basic household chores unassisted; runs errands and goes shopping alone; is able to cook meals without assistance; goes outside every day by walking, riding a bicycle, and using public transportation; shop in stores; pays and manages money and bills; watches television with no indication of difficult[y] following a program; interacts with friends and neighbors; and does magic tricks. Moreover, the record shows that treatment has been essentially routine and conservative in nature as [Plaintiff] merely received follow-up care for intermittent physical complaints. Additionally, the objective findings do not support anything [other] than mild abnormalities. Accordingly, the undersigned finds [Plaintiff's] physical impairments are nonsevere.

AR 19-20 (citations omitted).

**2. Analysis**

Plaintiff argues that the ALJ's finding that he does not have a severe physical impairment is not supported by substantial evidence. JS at 5. The Court disagrees.

"In step two of the disability determination, an ALJ must determine whether the claimant has a medically severe impairment or combination of impairments." Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011). The existence of a severe impairment is demonstrated when the

evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005); Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[3] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. §§ 404.1521(b), 416.921(b). The inquiry at this stage is "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (citing Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)). An impairment is not severe if it is only a slight abnormality with "no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856, at *3 (1985); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). A "finding of no disability at step two" may be affirmed where there is a "total absence of objective evidence of severe medical impairment." Webb, 433 F.3d at 688 (reversing a step two determination "because there was not substantial evidence to show that [the claimant's] claim was 'groundless'").

      The ALJ's determination that Plaintiff's alleged physical impairments were not severe is supported by substantial evidence. In October 2008, Plaintiff reported that he could cook meals and perform all basic household chores unassisted, run errands, go shopping, and independently perform all self-care activities. AR 272. In April 2013, Plaintiff reported that he walked for 1 to 2 hours a day. AR 287. In an April 16, 2013 function report, Plaintiff wrote that

---

[3] The Court notes that 20 C.F.R. §§ 404.1521 and 416.921 have been renumbered in a revision effective March 27, 2017, as 20 C.F.R. §§ 404.1522 and 416.922, with no substantive changes. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5860 (Jan. 18, 2017).

5

after working part-time for 3 or 4 hours, he would visit the mall. AR 236. He also wrote that he had "no problem with personal care," including dressing, bathing, shaving, feeding himself, or using the toilet. Id. He cleaned his house and did laundry once a week and went outside every day. AR 237-38. He could "go out alone," walk, ride a bicycle, use public transportation, and shop in stores. AR 238. Plaintiff testified at the hearing that he could stand or walk for 4 hours a day, "maybe" more, and he could sit for 3 or 4 hours at a time. AR 36-39. None of this evidence suggests that Plaintiff's ability to walk, stand, sit, or lift was significantly limited.

Plaintiff argues that the ALJ inaccurately concluded that Plaintiff had only "mild [physical] abnormalities." JS at 8. Plaintiff points to (1) a 1999 x-ray showing slight impingement on the left neural foramen for the C5 nerve by posterior osteophytes, with no other significant abnormalities, AR 432; (2) a December 2010 lumbar spine x-ray revealing "mild degeneration and listhesis," AR 415, 512; and (3) a September 2013 right shoulder and cervical spine x-ray showing "mild glenotumeral and arconioclevicular osteoarthritis," AR 666. JS at 8. The September 2013 x-ray showed "advanced degenerative changes at C4/C5 and C5/C6." JS at 8; AR 667. But Plaintiff's September 2013 physical examination was benign and his doctor prescribed only home exercises. See AR 719-20. Furthermore, regardless of the x-ray results, the record as a whole reflects that Plaintiff's actual abilities to perform basic work activities were not significantly limited. To the extent Plaintiff implies that the Court must remand because the ALJ did not specifically discuss the x-rays or acknowledge that the 2013 x-rays showed degeneration not present 14 years earlier, see JS at 8, the ALJ was not required to discuss every piece of evidence submitted. See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).

Plaintiff also criticizes the ALJ for relying on evidence related to Plaintiff's daily activities, because his participation in "basic human function"

6

is not determinative of disability. JS at 9 (citing Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989)). As previously discussed, the record reflects that Plaintiff was capable of far more than "basic human function." The ALJ properly took into account Plaintiff's level of activity. See Magallanes, 881 F.2d at 756.

Plaintiff argues that the ALJ wrongly concluded that Plaintiff pursued nothing more than conservative treatment for his physical impairments. See JS at 10. According to Plaintiff, non-conservative treatment options did not exist. See id. Plaintiff's argument at least partially misses the ALJ's point. The ALJ noted that the treatment was "routine and conservative in nature as [Plaintiff] merely received follow-up care for intermittent physical complaints." AR 20; see also AR 24 ("[T]he record reveals relatively infrequent trips to the doctor for the allegedly disabling symptoms."). In other words, the ALJ concluded that Plaintiff's treatment history and his efforts to obtain treatment did not support a finding that Plaintiff's physical impairments were severe. The record contains substantial evidence to support that conclusion, demonstrating that not only were Plaintiff's doctor visits infrequent but that he took pain medications only briefly before and after his hernia surgery in 2011. AR 339-40, 469. The ALJ properly took Plaintiff's "essentially . . . conservative" treatment into account. See Parra v. Astrue, 481 F.3d 742, 750–51 (9th Cir. 2007) (noting that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); see also Moncada v. Chater, 60 F.3d 521, 524 (9th Cir.1995) (allegations of disabling pain can be discredited by evidence of infrequent use of pain medication).

**B.    ALJ's Step Three Finding**

Listing 12.05C[4] covers intellectual disabilities and provides in relevant

---

[4] Social Security Regulations regarding the criteria for evaluating mental

7

part:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. § 404, subpt. P, app. 1 § 12.05.[5]

The ALJ found that Plaintiff's impairments did not meet Listing 12.05C for the following reasons:

> In terms of the requirements in paragraph C, they are not met because [Plaintiff] does not have a valid verbal, performance,

---

disorders were amended effective January 17, 2017. Because the ALJ's decision is the final decision of the Commissioner, the Court applies the version of Listing 12.05 in effect at the time of the ALJ's decision. See Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 2016 WL 5341732, *66138 & n.1 (Sept. 26, 2016) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."); see, e.g., Hooks v. Colvin, No. 16-2888, 2017 WL 622215, at *7 (N.D. Ill. Feb. 15, 2017) (assessing claimant's "argument under Listing 12.05(C) as it was written at the time of the ALJ's decision"); Johnson v. Berryhill, No. 15-4666, 2017 WL 1135129, at *2 (D.S.C. Mar. 27, 2017) (analyzing "case as if Listing 12.05C were still in effect").

[5] Plaintiff does not contend that he satisfied the requirements of paragraphs A, B, or D.

or full scale IQ of 60 through 70 and a physical or other mental
impairment imposing an additional and significant work-related
limitation of function. The Wechsler Adult Intelligence Scale,
Third Edition reveals a verbal I.Q. score of 68, performance I.Q.
score of 77, and a full scale I.Q. score of 77, all of which fall
between the mildly mentally retarded and borderline range of
current intellectual functioning for [Plaintiff'] age group. However,
the [examining psychologist] noted that [Plaintiff's] behavioral
functioning appears to be significantly higher than the I.Q.
estimates would suggest as [Plaintiff] is able to perform activities
of daily living without assistance and without difficulty.

AR 20-21.[6]

At step three of the disability determination, the ALJ determines whether a claimant has an impairment or combination of impairments that meets or equals a listed impairment. See Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The claimant has the initial burden of proving that he has an impairment that meets or equals a Listing. Sullivan v. Zebley, 493 U.S. 521, 530-33 (1990); see Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."). To "meet" a listed impairment, a claimant must establish that he satisfies each characteristic of the listed impairment in question. Tackett, 180 F.3d at 1099. To "equal" a

---

[6] The ALJ mistakenly wrote that Plaintiff was assigned a full scale IQ score of 77. See AR 20, 23 (citing AR 274). However, the ALJ correctly indicated that Plaintiff received a verbal IQ score of 68, which meets paragraph C's IQ requirement.

9

listed impairment, a claimant "must establish symptoms, signs, and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." Id. (citation omitted).

Plaintiff contends that the medical record established that he met or equaled Listing 12.05C because he "obtained a verbal IQ score of 68[] and a full scale IQ of 70" and he had the severe "physical impairment of osteoarthritis and cervical degenerative disc disease." JS at 11, 18.[7] However, as explained in Section III.A.2, supra, the ALJ's determination that Plaintiff did not have a severe physical impairment is supported by substantial evidence. Thus, substantial evidence necessarily supports the ALJ's conclusion that Plaintiff's physical impairments did not impose an additional and significant work-related limitation of function. The Court finds no error in the ALJ's determination that Plaintiff's impairments did not meet Listing 12.05C.

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: May 11, 2017

DOUGLAS F. McCORMICK
United States Magistrate Judge

---

[7] Plaintiff does not argue that he had another mental impairment imposing an additional and significant work-related limitation of function.